## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABDUL SHABAZZ**, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| **NATIONSTAR MORTGAGE LLC, d.b.a. RIGHTPATH SERVICING**, | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Abdul Shabazz, individually and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant Nationstar Mortgage LLC d.b.a. RightPath Servicing and states as follows for his Class Action Complaint:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Abdul Shabazz ("Plaintiff") is a natural person residing in Northampton County, Pennsylvania.

2.     Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing and Mr.Cooper ("Defendant" or "Nationstar") is a foreign limited liability company incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

3.     Nationstar does business in the state of Pennsylvania and is licensed to do business in the state of Pennsylvania as a foreign limited liability company.

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5.      This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as Plaintiff resides within this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### FHA Mortgages and the Regulations of the HUD Secretary

7.      Every residential mortgage loan that is insured by the Federal Housing Administration ("FHA"), including Plaintiffs' loan with Nationstar, contains substantially similar contractual provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD").

8.      Pursuant to 12 U.S.C. § 1715u(a), the Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations.  That statutory provision reads:

> Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

9.      The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as Plaintiff's Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

10.    The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, March 31, 2022.

11.    Further, HUD regulations require mortgagees that sell FHA-insured mortgages to "utilize HUD's Loss Mitigation Options to avoid foreclosure, when feasible." HUD 4000.1 III.A.2.j.

12.    The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. SF Handbook at III.A.2.r.ii(C)(1)(a)-(b) (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

13.    Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See*, *inter alia*, SF Handbook at III.A.2.o.

14.    One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as Plaintiff's Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

15.    The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, March 31, 2022.

16.    Further, HUD regulations require mortgagees that sell FHA-insured mortgages to "utilize HUD's Loss Mitigation Options to avoid foreclosure, when feasible." HUD 4000.1 III.A.2.j., September 26, 2022.

17.    The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. SF Handbook at III.A.2.r.ii(C)(1)(a)-(b), July 12, 2022 (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

18.    Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See*, *inter alia*, SF Handbook at III.A.2.o., September 26, 2022.[1]

19.    One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

---

[1] On February 13, 2023, HUD published Mortgage Letter 2023-03 which had to be implemented no later than April 30, 2023. *See*, a copy  of Mortgage Letter 2023-03, attached as **Exhibit 1**. Through this letter, all "FHA-HAMP Options are temporarily suspended and must not be offered through October 30, 2024. Mortgagees must evaluate all Borrowers for the COVID-19 Recovery Home Retention Options." *See*, Exhibit 1. That is, the COVID-19 Recovery Home Retention Options became the exclusive loss mitigation options available for FHA Loans.

20.     Mortgagees must review all borrowers for COVID-19 Recovery Options:

(a) If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

(b) If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19 and within 120 days from the date of a Borrower's request for loss mitigation.

*See*, SF Handbook at III.A.2.o.iii.(B)(1)-(2).

21.     Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not receive any incentive from HUD for offering and entering borrowers into COVID-19 Recovery Options. *See*, SF Handbook at III.A.2.o.iii.(A).

22.     In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" to reinstate their mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

23.     If a borrower does not qualify for a "Standalone Partial Claim", however, "the Mortgagee *must review* the Borrower for the COVID-19 Recovery Modification" ("Recovery Modification"). *See*, SF Handbook at III.A.2.o.iii.(C)(2) (emphasis added).

24.     The Recovery Modification is a 360-month or 480-month[2] Loan Modification, which must include a Partial Claim, if Partial Claim funds are available. The COVID-19 Recovery

---

[2] On March 8, 2023, HUD published Mortgage Letter 2023-06. *See*, a copy of Mortgage Letter 2023-06, attached as **Exhibit 2**. Through this letter, HUD introduced the 480-month Recovery

Modification ***targets a reduction in the P&I portion of the Borrower's monthly Mortgage Payment***" aiming to achieve a "25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment" (the "Target Payment"). *See*, SF Handbook at III.A.2.o.iii.(C)(2)(a).

25.    The ***only*** eligibility requirements for a Recovery Modification are that the mortgagee must ensure that: (1) The borrower indicates they have the ability to make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

26.    There are a series of steps that a mortgagee must apply in attempting to reach the Target Payment and once the Target Payment is achieved, there is no need to utilize any subsequent steps:

(a)  "Step 1 – Calculate Partial Claim Availability… The Mortgagee must determine the maximum Partial Claim amount available for a COVID-19 Recovery Modification."

(b)  "Step 2 – Arrearages… The Mortgagee must calculate the arrearages… The Mortgagee must ensure that all Late Charges and penalties are waived. Mortgagees are not required to waive Late Charges and penalties, if any, accumulated prior to March 1, 2020."

(a)  "Step 3 – Modify the Rate and Term of the Mortgage… The Mortgagee must then extend the term to 360 months and calculate the modified Mortgage Payment. The interest rate of the modified Mortgage is no greater than the most recent [Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed rate conforming Mortgages (U.S. average), rounded to the nearest one-eighth

---

Option which was required to be implemented no later than May 8, 2023. Prior to this point in time, the only term length for the Recovery Modification was 360 months.

of 1 percent (0.125 percent) as of the date the Borrower is offered a COVID-19

Recovery Modification."

(b) "Step 4 – Principal Deferment… If the target payment is not achieved, the

Mortgagee must apply the remaining Partial Claim funds, if any, as a principal

deferment, to achieve the target payment with the modified Mortgage."

*See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

27.    Prior to the implementation of Mortgagee Letter 2023-06, the SF Handbook

required that even if the Target Payment is not achieved through the aforementioned steps, "Step

7"—previously "Step 5" before the implementation of Mortgage Letter 2023-06—requires that

"the Mortgagee ***must offer*** the Borrower ***the lowest monthly P&I payment achieved under the***

***COVID-19 Recovery Modification***. If the Borrower affirms that they can make the offered

payment, then the Mortgagee must complete that option." *See*, SF Handbook at

III.A.2.o.iii.(C)(2)(c) (emphasis added).

28.    Following the implementation of Mortgagee Letter 2023-06, the SF Handbook

requires:

> If the Mortgagee cannot achieve the target payment using the above steps, ***then the Mortgagee must offer the Borrower the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification*** or, if the P&I monthly payment increases under the COVID-19 Recovery Modification and the COVID-19 Standalone Partial Claim is available, the COVID-19 Standalone Partial Claim. ***If the Borrower affirms that they can make the offered payment, then the Mortgagee must complete that option.***

*See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

29.    In short, under the SF Handbook, both before and after the implementation of

Mortgagee Letter 2023-06, while a Recovery Modification requires a mortgagee to *attempt* to

achieve the Target Payment, it is not *required* to achieve the Target Payment or achieve *any*

*reduction* in the P&I portion of a borrower's monthly payment—while a reduction in the P&I portion of a borrower's monthly payment is attempted, it is not *required* in order for a mortgagee to offer a Recovery Modification.

30.    Again, "COVID-19 Recovery Options" are designed to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the P&I" portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

### *Regulation X and COVID-19 Related Amendments to 12 C.F.R. § 1024.41*

31.    12 C.F.R. § 1024.41 generally provides procedural guidelines to which a servicer must adhere when a borrower submits a loss mitigation application.

32.    Effective August 21, 2021, the Bureau of Consumer Financial Protection, amended 12 C.F.R. § 1024.41 to include, *inter alia*, the following subsection.

**(vi) Certain COVID-19-related loan modification options.**
   **(A)** Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a borrower a loan modification based upon evaluation of an incomplete application, provided that all of the following criteria are met:
   **(1)** The loan modification extends the term of the loan by no more than 480 months from the date the loan modification is effective and, for the entire modified term, does not cause the borrower's monthly required principal and interest payment to increase beyond the monthly principal and interest payment required prior to the loan modification.
                                    * * *
   **(B)** Once the borrower accepts an offer made pursuant to paragraph (c)(2)(vi)(A) of this section, the servicer is not required to comply with paragraph (b)(1) or (2) of this section with regard to any loss mitigation application the borrower submitted prior to the servicer's offer of the loan modification described in paragraph (c)(2)(vi)(A) of this section.

12 C.F.R. § 1024.41(c)(2)(vi).

33.    Simply stated, 12 C.F.R. § 1024.41(c)(2)(vi), allows for an exception to a servicer's obligation to follow the procedures of 12 C.F.R. § 1024.41 for a borrower's submitted loss mitigation application if a servicer offers and the borrower accepts a loan modification that meets the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), which includes a reduction in the P&I portion of the borrower's payment. See, 12 C.F.R. § 1024.41(c)(2)(vi).

34.    12 C.F.R. § 1024.41(c)(2)(vi) merely offers a safe harbor from compliance with the procedures of 12 C.F.R. § 1024.41 if certain loan modification options are offered and accepted, but it does not put any restrictions on the terms of any loss mitigation option that may be offered to a borrower—nor does any other provision of 12 C.F.R. § 1024.41.

35.    Servicers are permitted to offer loss mitigation options that do not meet the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), it simply means that if it does so, it must continue to comply with the remainder of the obligations imposed by 12 C.F.R. § 1024.41 in relation to any submitted loss mitigation application.

### *Plaintiffs' and Class Members' Loans*

36.    Nationstar is the servicer of Plaintiff's loan as well as the notes, and mortgages on real property that secure the notes (collectively, the "loans") of the members of the Recovery Modification Class (defined *infra*) and the NOE Subclass (defined *infra*) (collectively, the "Classes").

37.    Plaintiff's loan and the loans of the members of the Classes contain substantially similar language, as they were drafted using standardized templates, specifically, the model uniform instruments required by the FHA.

38.     Plaintiff's loan and the loans of the members of the Classes are each insured by the FHA and are required to be serviced in accordance with FHA requirements and all applicable laws including the HUD guidelines contained in the SF Handbook.

39.     Plaintiff, each member of the Classes, and Nationstar are each persons as defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. C.S.§§ 201-1, *et seq*., as each of the loans arose from the purchase of goods primarily for personal, family or household purposes as defined by the UTPCPL as the loans secured their residential property, and Nationstar's actions and practices described herein were conducted as part of trade or commerce under the UTPCPL. 73 Pa. C.S. §§ 201-2(2)-(3); 201-9.2.

### *Nationstar's Improper Denials of Eligibility for Recovery Modifications*

40.     Plaintiff and each Recovery Modification Class Member were impacted, directly or indirectly, by the Presidentially-Declared COVID-19 National Emergency, fell delinquent on their mortgages.

41.     Plaintiff and each Recovery Modification Class Member subsequently requested loss mitigation assistance from Nationstar.

42.     Nationstar reviewed Plaintiff and each Recovery Modification Class Member for eligibility for COVID-19 Recovery Options.

43.     Nationstar denied Plaintiff and each Recovery Modification Class Member for eligibility for a Recovery Modification claiming that there was an insufficient reduction in the P&I portion of Plaintiff's and each Recovery Modification Class Member's monthly payment.

44.     As discussed, *supra*, there is no requirement that the P&I portion of a borrower's payment be reduced through a Recovery Modification as the only eligibility requirements are that:

(1) The borrower indicates they can make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

45.    Nationstar's denial of Plaintiff and each Recovery Modification Class member for eligibility for a Recovery Modification was improper as each such denial was based upon an eligibility requirement that does not exist.

46.    Nationstar's improper denial of Plaintiff and each Recovery Modification Class member for eligibility for a Recovery Modification based upon false pretenses constitute a failure to act in compliance with the regulations of the HUD Secretary and evidence a lack of reasonable skill, care, and diligence, as well as a failure to act good faith and with fair dealing and constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding with respect to each of the loans.

47.    Nationstar, in sending correspondence stating or otherwise communicating to Plaintiff and each Recovery Modification Class member that they were ineligible for a Recovery Modification based upon false pretenses, engaged in conduct constituting fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding

48.    As COVID-19 Recovery Options are not incentivized as other loss mitigation options permitted by the regulations of the HUD Secretary, it is possible that Nationstar is steering borrowers away from options such as Recovery Modifications in order to obtain incentives for placing borrowers in other loss mitigation options.

49.    Nationstar's conduct has caused Plaintiff and Recovery Modification Class members to suffer significant pecuniary and non-pecuniary damages.

50.    Plaintiff and Recovery Modification Class members were each denied for a Recovery Modification at the market rate of the time of their review and lost the opportunity for such a loan modification.

51.     Plaintiff and Recovery Modification Class members seeking to obtain a loan modification or other loss mitigation relief, will have to incur costs, expenses, and lost time in submitting loss mitigation applications that otherwise would not have been and should not have been necessary.

52.     Presuming Plaintiff and Class members can subsequently obtain a loan modification, any such modification is going to have much less favorable terms than the Recovery Modification to which each was entitled. As interest rates have been steadily on the rise, roughly doubling, if not more, since the onset of the Presidentially-Declared COVID-19 National Emergency, any delay in obtaining a loan modification will almost certainly result in any subsequent modification having a higher rate for which Plaintiff and Class Members will be responsible to pay. Moreover, any delay will result in further increased amounts for accrued interest, escrow advances, and other such items, to be capitalized onto the loans through these modifications and Plaintiff and Class members will have to pay these amounts back with interest.

53.     Plaintiff and Recovery Modification Class members, if unable to qualify for a subsequent loan modification, will remain at risk of foreclosure and of the loss of their homes and are likely to incur costs and legal fees to defend against foreclosure actions initiated in court and file for bankruptcy protection.

54.     Plaintiff and Recovery Modification Class members have further been caused to suffer severe emotional distress driven by Nationstar's actions and by the tangible fear that Nationstar's failure to offer them a Recovery Modification as required by the regulation of the HUD Secretary, would result in the loss of their homes to foreclosure sale.

55.     Ironically, as further discussed, *infra*, Plaintiff and an unknown number of Recovery Modification Class members have recently been approved for 480-month Recovery

Modification options despite their prior denial for 360-month or 480-month Recovery Modifications despite the modified P&I portion of Plaintiff's payments under such approved options being *greater* than the existing P&I portion of Plaintiffs' payments and despite there being no change in the  SF Handbook requiring, at all pertinent times, that a servicer must offer a Borrower the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification regardless of whether the P&I portion of Plaintiff's payments would decrease.

56.    Regardless, as discuss, *infra*, these newly approved 480-month Recovery Modification options that Plaintiff and an unknown number of Recovery Modification Class members have recently been approved for contain less favorable terms than those options which Nationstar was mandated to offer as they have, *inter alia*,  increased modified balances, longer terms,  and/or less favorable interest rates.

## FACTS RELEVANT TO PLAINTIFF MR. SHABAZZ

57.    Plaintiff fell upon financial hardships and defaulted on his obligations in relation to his FHA-insured mortgage loan.

58.    Nationstar initiated foreclosure proceedings against Plaintiff for which Plaintiff retained the assistance of North Penn Legal Services to represent his interests.

59.    In or around April of 2023, Plaintiff contacted Nationstar to request loss mitigation pursuant to the COVID-19 Recovery Options.

60.    Nationstar sent correspondence dated April 26, 2023 stating that that Plaintiff was denied for a Recovery Modification, which Nationstar identified as an "FHA Disaster Modification" because of an "Insufficient Monthly Payment Reduction", specifically stating "[t]he required modification terms would result in a principal and interest mortgage payment that is greater than your current principal and interest payment and therefore *does not meet the*

*requirements of the program*" (emphasis added) (the "Denial"). *See*, a copy of the Denial, attached as **Exhibit 3.**

61.     Prior to May 15, 2023, Plaintiff, through Sarah M. Andrew at North Penn Legal Services, sent correspondence consisting of an appeal of the Denial and otherwise as a notice of error to Nationstar at the Designated Address alleging that Nationstar committed errors in relation to his loan by failing to issue and denying Plaintiff's eligibility for a Recovery Modification because the P&I portion of his monthly mortgage payment would not decrease under such an option (the "NOE").

62.     On May 31, 2023, Nationstar sent correspondence in response to the NOE through which Nationstar indicated that the "denial for insufficient monthly payment reduction is valid. To be eligible for [a Recovery Modification], the post-modification principal and interest (P&I) payment must be equal to or less than the current P&I payment" (the "Response"). *See*, a copy of the Response, as **Exhibit 4.**

63.     Through the Response, Nationstar stated that the proposed Recovery Modification would have had the following terms:

> Current principal and interest payment: $1,410.90
> Proposed post modification principal and interest payment: $1,662.76
>
> Proposed post modification Unpaid Principal Balance (UPB): $369,106.44
> Partial Claim: $89,362.17
> Proposed interest-bearing UPB: $279,744.27
> Proposed post-modification interest rate: 6.625%
> Amortization duration: 480 months

*See*, Exhibit 4.

64.     On July 4, 2023, Nationstar sent correspondence to Plaintiff stating that Plaintiff was approved for a Partial Claim and Recovery Modification (the "Shabazz Modification") with the following terms:

Partial Claim: $89,362.17
Monthly P& I Payment: $1,734.21
Interest Rate: 6.8750%
Amortization Duration: 480 months
Modified Interest Bearing Principal Balance: $283,195.68

*See*, a copy of the Shabazz Modification, attached as **Exhibit 5.**

65.     That is, despite *nothing* changing as to the eligibility guidelines for Recovery Modifications, Nationstar stated that Plaintiff was approved for a Recovery Modification despite the modified payment *increasing further* than the previous "proposed" modification that he was rejected for due to the P&I portion of his payment not decreasing--that is, Nationstar denied him for a Recovery Modification through the Shabazz Denial when his payment would increase to $1,662.76, but *approved* him when the payment increased to $1,734.21 through the Shabazz Modification. *See*, Exhibits   4 and 5.

66.     Plaintiff, fearful of imminently losing his home and otherwise fearful that any subsequent modification offer would be even worse, has reluctantly agreed to accept the Modification to mitigate his damages.

67.     Nonetheless, Nationstar's improper actions caused Plaintiff to suffer from actual and proximate damages including, but not limited to:

(a) The lost opportunity to reinstate the Loan through a partial claim in conjunction with the application of PAHAF funds which would have reinstated the Loan, not modified the Loan, thereby resetting the amortization, increasing his payment, and increasing his interest rate from 3.625% to 6.8750%, and which would have allowed Plaintiff to keep his original P&I  payment of $1,410.90.

(b) The lost opportunity to obtain a Recovery Modification at an interest rate of 6.625% as per the proposed modification contained in the Shabazz Denial;

(c)  Legal fees, costs, and expenses related to the continued defense of the Foreclosure;

(d)  Significant delay in the loss mitigation process and rehabilitation of their credit;

(e)  Accrued interest, fees and charges imposed on the Loan including default servicing related fees since the issuance of the Shabazz Denial for which Plaintiff is personally obligated or which otherwise negatively impacts any equity in the Home to which he is entitled and for which he will have to repay at 6.875%; and,

(f)  Severe emotional distress driven by Nationstar's failure to properly handle their review of his eligibility for a Recovery Modification as required by HUD and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of his Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## <u>CLASS ACTION ALLEGATIONS</u>

68.  **Recovery Modification Class Definition**: Plaintiff brings this action pursuant to Fed. Civ. R. 23 on behalf of a class of similarly situated individuals and entities (the "Recovery Modification Class"), defined as follows:

> All loan borrowers in the State of Pennsylvania, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, and (5) who were denied eligibility for a Recovery Modification because the P&I portion of their monthly mortgage payment would not decrease.

> Excluded from the Recovery Modification Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Recovery Modification Class; (4) any

persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

69.    **NOE Subclass Definition**: Plaintiff also brings this action pursuant to Fed. Civ. R. 23 on behalf of a subclass of similarly situated individuals and entities ("the NOE Subclass"), defined as follows:

> All loan borrowers in the State of Pennsylvania, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, (5) who were denied eligibility for a Recovery Modification because the P&I portion of their monthly mortgage payment would not decrease, (7) who sent a notice of error to Nationstar regarding the same, and (8) did not receive an adequate response to the same.

> Excluded from the NOE Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the NOE Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

70.    **Numerosity and Ascertainability**: Upon information and belief, the Classes are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. This conclusion is reasonable because as of July 20, 2022, Nationstar was the largest nonbank home loan servicer in the United States and the fourth largest servicer overall.[3] Moreover, as the loss mitigation at issue centers around individuals impacted by the COVID-19 pandemic which affected nearly every family in the country, if not the world, it is expected that a higher percentage of borrowers than would be typical are loss mitigation relief for

---

[3] https://money.usnews.com/loans/mortgages/reviews/mrcooper-mortgage (last accessed August 1, 2023).

their FHA Loans. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

71.    **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. Simply put, Nationstar improperly denied Plaintiff and Recovery Modification Class members for Recovery Modifications based on non-existent requirements and a misinterpretation of 12 C.F.R. § 1024.41(c)(2)(vi) in contravention of the SF Handbook and Plaintiff and Recovery Modification Class members were harmed as a result. Further, Nationstar failed to properly respond to NOE Subclass members' notices of error regarding the aforementioned conduct. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

(a) Whether Nationstar improperly denied Plaintiff and Recovery Modification Class members for eligibility for Recovery Modifications due to the P&I portion of their monthly mortgage payment not decreasing;

(b) Whether Nationstar misrepresented the eligibility requirements for Recovery Modifications to Plaintiff and Recovery Modification Class members in claiming that the P&I portion of their monthly mortgage payment would need to decrease to qualify for a Recovery Modification;

(c) Whether Nationstar properly responded to the notices of error sent by or on behalf of the members of the NOE Subclass;

(d) Whether Plaintiff and members of the Classes suffered actual damages, and the measure and amount of those damages; and,

(e) Whether Plaintiff and members of the NOE Subclass are entitled to recover statutory damages.

(f) Whether Plaintiffs and members of the Recovery Modification Classes and the HAF Partial Claim Classes are entitled to recover treble damages.

72.     **Typicality**: Plaintiff's claims are typical of the claims of the Classes. On information and belief, Plaintiff's and the loans of members of the Classes contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans insured by the FHA, contain substantially similar language to such documents, or are otherwise bound by or subject to the same guidelines contained in the SF Handbook. As such, Plaintiff and members of the Classes were subjected to and affected by a uniform course of conduct; specifically, Nationstar's improper denial of the loans for eligibility for Recovery Modifications.

73.     **Adequacy**: Plaintiff will adequately represent the interests of the Classes and does not have adverse interests to the Classes. Plaintiff's counsel has extensive experience litigating consumer class actions.

74.     **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

**COUNT ONE:**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §§ 2201, *et seq.*)**
**(On behalf of Plaintiffs and the Recovery Modification Class)**

75.     Plaintiff repeats and realleges paragraphs 1 through 74 with the same force and effect as though fully set forth herein.

76.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

77.     Plaintiff, individually, and on behalf of the Recovery Modification Class, seeks an order declaring that neither the regulations of the HUD Secretary nor 12 C.F.R. § 1024.41(c)(2)(vi) prohibits a servicer from offering a Recovery Modification if the P&I portion of their monthly mortgage payment would not decrease under such a modification.

78.     The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Recovery Modification Class members contend that, pursuant to the regulations of the HUD Secretary, and regardless of 12 C.F.R. § 1024.41(c)(2)(vi), they should have been offered Recovery Modifications when Nationstar reviewed their eligibility for the same. In contrast, Nationstar has repeatedly contended that it is prohibited from offering Recovery Modifications if the P&I portion of their monthly mortgage payment would not decrease under such a modification. Accordingly, this case will determine the legal scope of Defendant's obligations to Plaintiff and  Recovery Modification Class members, as well as further individuals who may seek such loss mitigation relief moving forward.

79.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendant has denied and will continue to improperly deny borrowers for Recovery Modifications without any proper justification when such a modification may be the only way for a borrower to remain in their home after having been impacted by the COVID-19 pandemic.

80.     If the Court were to deny Plaintiff's and Recovery Modification Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to wrongfully deny borrowers for Recovery Modifications and make misrepresentations as to the same in the guise of justifying such improper conduct. As such, the resolution of this controversy is contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiff and the Recovery Modification Class.

81.     Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiff's and Recovery Modification Class members' loans.

**COUNT TWO:**
**VIOLATIONS OF THE UTPCPL,**
**(73 Pa. C.S. § 201-1, *et seq.*)**
**(On behalf of Plaintiff and the Recovery Modification Class)**

82.     Plaintiff repeats and realleges paragraphs 1 through 81 with the same force and effect as though fully set forth herein.

83.     Plaintiff, each member of the Classes, and Nationstar are each a "person" under the UTPCPL as each is a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity. 73 Pa. C.S. § 201-2(2).

84.     Nationstar's actions in servicing the Plaintiff's and Recovery Modification Class members' loans constitutes "trade" or "commerce" under the UTPCPL as such actions are services performed in relation to real property or thing of value and is commerce directly affecting the people of the Commonwealth of Pennsylvania. 73 Pa. C.S.§ 201-(3).

85.     "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following [...] (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S.§ 201-(4)(xxi).

86.     Nationstar, in denying Plaintiff and each Recovery Modification Class member for eligibility for a Recovery Modification based upon the false pretense that a reduction in the modified P&I portion of their monthly payment was *required*, constitute fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in relation to the loans in violation of the UTPCPL.

87.     Nationstar, in sending correspondence stating or otherwise communicating to Plaintiff and each Recovery Modification Class member that they were ineligible for a Recovery Modification based upon false pretenses, engaged in conduct constituting fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding in violation of the UTPCPL.

88.     As a result of Nationstar's conduct, Nationstar is liable to Plaintiff and  Recovery Modification Class members for actual damages, as further described, *supra*, as well as treble damages, and reasonable attorneys' fees and costs incurred in connection with this action. 73 Pa. C.S. § 201-9.2.

## COUNT THREE
### Violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) (On behalf of Plaintiff and the NOE Subclass)

89.     Plaintiff repeats and realleges paragraphs 1 through 88 with the same force and effect as though fully set forth herein.

90.      "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

91.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by

an agent of the borrower." Supplement I to Part 1024.

92.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

93.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

94.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

95.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. §

2605(k)(1)(E).

96.     Plaintiff and each NOE Subclass member, sent notices of error (the "NOEs") to Nationstar at the Designated Address alleging that Nationstar committed errors in denying their eligibility for a Recovery Modification because the P&I portion of their monthly mortgage payment would not decrease.

97.     Nationstar failed to adequately respond to the NOEs in violation of 12 C.F.R. § 1024.35(e) as Nationstar failed to admit and correct the alleged errors or otherwise failed to perform a reasonable investigation into said errors, if Nationstar responded at all. *See*, Exhibit 4.

98.     Had Nationstar performed a reasonable investigation into the errors alleged through the NOEs, Nationstar would have plainly uncovered that denying Plaintiff and each Recovery Modification Class member for eligibility for a Recovery Modification based upon the false pretense that a reduction in the modified P&I portion of their monthly payment was *required* was improper and contrary to the HUD policies and guidelines in the SF Handbook; Nationstar's failures to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOEs constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Plaintiffs and NOE Subclass members to suffer actual damages as detailed, *supra*.

99.     Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's and NOE Subclass members' rights and Nationstar's obligations under RESPA and Regulation X.

100.    Nationstar's conduct as pleaded, *supra*, shows a conscious disregard for Plaintiff's and NOE Subclass Members' rights and Nationstar's obligations under RESPA and Regulation X.

101.    As a result of Nationstar's actions, Nationstar is liable to Plaintiff and NOE Subclass members, all of whom has suffered an ascertainable loss on money, for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Abdul Shabazz, individually and on behalf of all others similarly situated, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Recovery Modification Class and the NOE Subclass, each as defined, *supra*;

B. Designating Plaintiff as representative of the Recovery Modification Class and the NOE Subclass, and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff, the Recovery Modification Class, and the NOE Subclass, and against Defendant;

D. Entering a declaratory judgment that neither the regulations of the HUD Secretary nor 12 C.F.R. § 1024.41(c)(2)(vi) prohibits a servicer from offering a Recovery Modification if the P&I portion of their monthly mortgage payment would not decrease under such a modification;

E. Awarding Plaintiff, the Recovery Modification Class, and the NOE Subclass, their actual damages;

F. Awarding Plaintiff, the Recovery Modification Class, treble damages as allowed under the UTPCPL;

G. Awarding Plaintiff and the NOE Subclass their statutory damages as allowed under RESPA;

H. Awarding Plaintiff, the Recovery Modification Class, and the NOE Subclass, attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

I. Granting all such further and other relief as this Court deems just and appropriate.

> Respectfully submitted,
>
> LAW OFFICE OF JOSEPH M. ADAMS
>
> By:    /s/ Joseph M. Adams
>        Joseph M. Adams, Esq.
>        PA Attorney ID: 58430
>        200 Highpoint Drive
>        Suite 211A
>        Chalfont, PA  18914
>        josephmadamsesq@verizon.net
>        215-996-9977
>
> Brian D. Flick (Ohio Bar No. 0081605)
> (*pro hac vice* anticipated)
> Daniel M. Solar (Ohio Bar No. 0085632)
> (*pro hac vice* anticipated)
> **Dann Law**
> 15000 Madison Ave.
> Lakewood, OH 44107
> Telephone: (216) 373-0539
> Facsimile: (216) 373-0536
> notices@dannlaw.com
>
> *Counsel for Plaintiff Abdul Shabazz and the Putative Classes*

## JURY DEMAND

Plaintiff Abdul Shabazz, individually and on behalf of all others similarly situated hereby requests a trial by jury on all issues.

> Respectfully submitted,
>
> LAW OFFICE OF JOSEPH M. ADAMS

By:    /s/ Joseph M. Adams
       Joseph M. Adams, Esq.
       PA Attorney ID: 58430
       200 Highpoint Drive
       Suite 211A
       Chalfont, PA  18914
       josephmadamsesq@verizon.net
       215-996-9977

Brian D. Flick (Ohio Bar No. 0081605)
(*pro hac vice* anticipated)
Daniel M. Solar (Ohio Bar No. 0085632)
(*pro hac vice* anticipated)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Abdul Shabazz and the Putative Classes*